IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SQUARE D CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 07 C 3897 |
| | ) |
| GAFFNEY-KROESE SUPPLY CORP., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiff Square D Co. ("SD") has moved to compel the production of certain documents from defendant Gaffney-Kroese Supply Corp. ("GK"). For the reasons stated below, the Court grants SD's motion in part.

**Background**

In its amended complaint in this action, SD alleges that defendant GK has sold counterfeit SD "QO" circuit breakers bearing SD's trademarks, which SD says may pose a safety risk. SD identifies two specific transactions by GK involving counterfeit QO circuit breakers but does not limit its claim in the lawsuit to those transactions. SD has sued GK under the Lanham Act, seeking damages and an injunction.

SD served GK with discovery requests seeking documents relating to its acquisitions of QO circuit breakers (legitimate or otherwise) and documents relating to its imports of circuit breakers generally. GK objected on various grounds, including

overbreadth and concerns that production of the requested records would unfairly subject GK to a risk of competitive injury. GK and SD compete in the sale of circuit breakers, including SD circuit breakers. SD sells QO circuit breakers through authorized distributors and to certain retailers. Authorized distributors are prohibited by their contracts with SD from reselling to unauthorized distributors or other resellers and can be terminated if they violate this prohibition. GK is concerned that if SD learns that GK obtained legitimate QO circuit breakers from authorized SD distributors, it will cut off those distributors and thus prevent further sales to GK.

At the hearing on the motion, the Court directed GK to produce documents regarding purchases of QO circuit breakers from entities not claimed to be authorized SD distributors. Such sales do not directly implicate the competitive harm concern expressed by GK. At the hearing, however, the Court noted the possibility that GK could have acquired QO circuit breakers from sources that had, in turn, acquired them from authorized SD distributors. Because follow-up discovery by SD to learn the original sources of supply could implicate GK's concerns, the Court suggested that follow-up discovery by SD regarding such sources could be subjected to prior court approval.

The Court took the remainder of SD's motion under advisement. To facilitate determination of the remaining issues, the Court directed GK to produce, for *in camera* inspection, documents concerning purchases from sources claimed to be authorized SD distributors, and it directed SD to produce, likewise for *in camera* inspection, a list of its authorized distributors – which SD contends is proprietary information. The Court also

2

directed both sides to submit position papers regarding the remaining disputed issues.

On February 15, 2008, SD sent the Court and GK's counsel a letter setting out its position regarding the issues under advisement. With its letter, SD provided to the Court, for *in camera* inspection, two CDs containing Excel spreadsheets listing distributors currently authorized to sell QO circuit breakers in North America, the United Kingdom ("UK"), and Trinidad – the only countries with authorized SD distributors from which GK received imported shipments of circuit breakers. In its position paper, SD stated that publicly available information reflects that between October 2006 and October 2007, GK received at least seventeen shipments of circuit breakers from overseas distributors. Of these, fourteen were from China, Singapore, or Hong Kong, locations where SD says it has no authorized distributors; the other three were from the UK or Trinidad.

On February 21, 2008, GK sent the Court, for *in camera* inspection, a letter setting out its position regarding the discovery dispute, along with several attachments. Though GK's counsel stated in the letter that a copy had not been sent to SD's counsel because it contained proprietary information, a later submission from SD reflects that it received a redacted copy of GK's letter. The Court does not know what was redacted in the version that GK sent to SD. In discussing the issues, the Court must make reference to certain of GK's arguments but will attempt to avoid any information that could be legitimately proprietary.

Before addressing the parties' contentions, the Court apologizes for taking longer

3

than it had expected to make this ruling. The delay may require an extension of the existing discovery deadlines; counsel should be prepared to address that point at the status hearing that is being set via this order.

## Discussion

In its position paper, SD acknowledges the possibility that GK may have purchased QO circuit breakers from authorized SD distributors. SD says that although it theoretically could sue GK for tortiously interfering with SD's contracts with the distributors, it disclaims any interest in doing so, stating that that its dispute with GK involves only sales of counterfeit products. SD asks the Court to do the following:

- require GK to produce all documents concerning its imports of circuit breakers from Hong Kong, Singapore, and China, on the theory that these could not have come from SD-authorized distributors, as it has none in those countries (SD says that if GK's documents reflect shipments from other countries, SD will provide lists of its authorized distributors in those countries);

- with regard to other transactions, compare the names of GK's suppliers to the list of SD's authorized distributors and require GK to produce all documents concerning purchases from entities that do not appear on the list;

- require GK to produce all documents concerning acquisitions of QO circuit breakers from retail sellers like Home Depot and Lowe's, because GK does not prohibit retail sellers from reselling;

- review documents concerning any remaining acquisitions – which should

be only those from currently authorized SD distributors – for purported "indicia of counterfeit acquisitions," including unit pricing at or below the minimum price at which SD sold the product in the relevant year. SD has provided the Court with documents reflecting its pricing during the relevant years.

In its position paper, GK asserts several objections to SD's proposals. The Court believes that the most efficacious way to address the disputed issues is to organize the discussion around GK's objections.

To start off with, the Court finds that SD's allegations regarding GK's participation in two transactions involving counterfeit QO circuit breakers give SD a legitimate basis to ascertain, via the discovery process, whether GK was involved in other such transactions. SD's request for records relating to GK's purchases of QO circuit breakers and its purchases of any circuit breakers from or via countries that are possible sources of counterfeit QO circuit breakers (because they have no authorized SD distributors) is reasonably likely to lead to the discovery of relevant and admissible evidence. That said, the Court is disinclined to allow SD free rein to obtain, via discovery, information that could generate litigation with entities that may be authorized SD distributors or with GK on a tortious interference theory not asserted in SD's complaint. As SD itself states in its position paper, this suit concerns the sale of counterfeit products, not unauthorized sales of genuine products.

1. GK first objects to SD's submission of a list that includes only its currently authorized distributors in North America, the UK, and Trinidad. GK argues that because

SD has requested records concerning GK's purchases going back to 2005, SD should be required to provide a list of its authorized distributors for that same period. GK appears to acknowledge that its "competitive injury" concern about SD cutting off its supply sources is not implicated by disclosure of entities from which GK has purchased circuit breakers that are not currently authorized SD distributors. GK says, however, that competitive injury is not its only objection. GK argues that its purchases from authorized SD distributors cannot possibly involve counterfeit QO circuit breakers, thus making those purchases irrelevant to the lawsuit.

The Court disagrees. First of all, the fact that an entity that sold to GK might have been an authorized SD distributor at the time does not necessarily mean that it was selling only genuine circuit breakers; it also could have been selling counterfeit products. Second, even if GK has a colorable relevance argument, this is outweighed by SD's legitimate need to ferret out sales of counterfeit QO circuit breakers. The Court has concluded that GK's discovery request falls within the scope of what Rule 26(b)(1) permits. The Court has credited GK's argument about the risk of cutting off its sources of supply, but that risk is greatly reduced if a particular supplier is not currently an authorized SD distributor.

For these reasons, the Court does not find SD's limited list of distributors to be insufficient for the purpose of making the determinations embodied in this decision.

2. GK points out that its concern regarding the potential for unfair competitive injury implicates not just its purchases from SD authorized distributors, but

also those from suppliers who purchased from authorized distributors. The Court

agrees, and it acknowledged as much at the hearing on SD's motion to compel. The

Court indicated at the time, and now concludes, that the best way to balance the

competing interests involved is to permit SD to obtain records concerning GK's

purchases from entities that it does not contend are currently authorized SD distributors

but to preclude SD from seeking follow-up discovery to identify those entities' sources

without prior leave of court. The Court will deal with this point in greater detail in the

section of this decision entitled "Order."

      3.      GK next argues that SD makes below-regular-price sales to potential

distributors as a marketing tool and that, as a result, it should be required to identify all

entities to which it has sold QO circuit breakers during the relevant period, whether or

not they are authorized distributors. The Court overrules this objection. GK has

provided no evidence supporting its contention, and SD has denied the contention via

an affidavit from its vice president who is in charge of distributor relationships and

establishing policies for sales of QO circuit breakers.

      4.      SD has asked the Court to direct GK to produce all documents regarding

acquisitions via Hong Kong, Singapore, and China, a request grounded in SD's statement

that it has no authorized distributors in those locations. As noted earlier, SD says that

publicly available records reflect that GK has received seventeen shipments of "circuit

breakers" from these locations.

      GK argues that SD incorrectly assumes, first, that these shipments involved QO

circuit breakers. According to GK, only two of the seventeen shipments "involve purchases of Square D QO circuit breakers," and these were from an entity or entities authorized to distribute QO circuit breakers. GK Position Paper at 5, 7. GK also argues that SD incorrectly assumes that shipment through a port in China, Hong Kong, or Singapore means the product originated there. This, too, is untrue, according to GK. In support of its objections, GK cites the affidavit of its president, Christopher Kroese, that it submitted in response to SD's motion to compel. Because the affidavit was filed in the public record, the Court will quote the pertinent portion directly. Kroese says that GK "has never purchased any Square D QO or QOB circuit breakers which originated from any manufacturer in mainland China or Hong Kong, nor have any Square D QO or QOB circuit breakers been shipped to Gaffney-Kroese in the United States from manufacturing sources in mainland China or Hong Kong." Kroese Affid. ¶ 8.

Kroese's affidavit does not deal completely with SD's legitimate concern regarding GK's purchases that came via China, Hong Kong, or Singapore, places in which SD has no authorized distributor. In this regard, the Court reads the affidavit literally, not liberally, as it was presumably drafted or at least carefully vetted by lawyers familiar with the case and with SD's motion to compel (indeed, the affidavit includes as a heading the names and addresses of SD's New Jersey and Chicago lawyers in this case). The first problem is that when Kroese says that his company has not purchased "*Square D* QO or QOB circuit breakers" from manufacturing sources in China or Hong Kong, that does not deal with the possibility that GK purchased *counterfeit* QO or QOB circuit

breakers.  Second, Kroese does not deal with Singapore at all.

In addition, as indicated earlier, the Court's primary concern in limiting SD's discovery is to avoid a situation in which SD learns via discovery that GK has acquired genuine QO circuit breakers directly or indirectly from authorized SD distributors and then takes steps to cut off the distributors.  Even if SD's request for documents concerning *all* of GK's circuit breaker purchases from China, Hong Kong, and Singapore might be overly broad, SD's legitimate need to obtain documents regarding transactions in counterfeit QO circuit breakers outweighs any concern arising from the claim of overbreadth.

For these reasons, the Court overrules GK's general objection to producing such documents.  The Court will address the details regarding what GK must produce, and how, in the section of this decision entitled "Order."

5.     GK does not object to producing documents concerning the transactions listed in Exhibit E to its position paper, which GK says involved purchases of genuine QO circuit breakers.  GK does not explain what distinguishes these transactions from those that it wishes to keep confidential, but the Court will take GK's offer at face value.  The Court will describe what GK is directed to produce in the section of this decision entitled "Order."

6.     GK objects to producing to SD documents concerning the transactions listed in Exhibit F to its position paper, which GK says involved purchases of QO circuit breakers from SD authorized distributors or from entities that purchased from SD

authorized distributors.  GK has identified the suppliers from which it made these purchases and, in some instances, the sources from which the suppliers obtained the circuit breakers.

The Court has attempted to compare these suppliers to the lists of authorized distributors in North America, the UK, and Trinidad provided by SD.  Some of them match names on SD's lists, but others do not.  This may be attributable to one of several factors that would not suggest the circuit breakers purchased from these sources are counterfeit:  the distributor may be located somewhere other than North America, the UK, or Trinidad; the names of some of the entities on GK's list and some of those on SD's lists include acronyms, abbreviations, or other variations that make it difficult to determine whether there is a match; or the distributor may have been authorized by SD at the time of the purchase but not currently so authorized.

The Court believes it is far better for counsel to make the initial comparison.  In this regard, the Court is, to put it mildly, dubious of SD's contention that its list of authorized distributors is proprietary and confidential.  SD's website has a search function that allows anyone public to locate authorized SD distributors in a given geographic area.  *See* http://ecatalog.squared.com/dsearch/ (last visited Mar. 30, 2008).  In addition, the websites of several of the entities on SD's "confidential and proprietary" list include prominent notations identifying them as SD distributors.  Unless SD can demonstrate that the current list is legitimately confidential, the Court will require SD to produce it to GK's outside counsel (for counsel's eyes only) to facilitate the selection and

production of responsive documents.

7. GK has not objected to SD's request that GK produce documents regarding its acquisitions of QO circuit breakers from retailers – which, SD says, are not prohibited from reselling to GK or anyone else.

8. As indicated earlier, SD asked the Court to examine GK's records of its acquisitions to identify those that reflect purchases at less than the lowest unit price at which SD sold the particular model to its authorized distributors. SD contends this would be an indication that the sale involved counterfeit products. In its position paper, GK has not directly addressed SD's contention. The Court has compared some, though not all, of the prices on GK's summary lists to those listed by SD as the lowest unit price charged to distributors for the particular time period. The vast majority of GK's purchases from the thirteen sources that it objects to disclosing were at unit prices below, in some instances significantly below, the lowest price on SD's price list for the pertinent year. At present, however, the Court cannot say with confidence that this is, as SD contends, indicative that the products were counterfeit. There could be other legitimate explanations – for example, a supplier's effort to dispose of inventory that it could not sell at a profit. Without further discussion, the Court is not prepared to say that purchase at a price below SD's distributor price is, by itself, sufficiently indicative of counterfeiting to require production of documents relating to such purchases.

**Order**

The Court directs the parties as follows:

a) Unless SD shows in writing, by no later than April 7, 2008, that its list of currently authorized distributors is legitimately "proprietary and confidential," the Court will require SD to produce the list to GK by April 10, 2008, to facilitate the further production of documents requested by SD. If SD is able to make a showing of confidentiality, the Court still will require the list to be produced to GK's outside counsel by April 10, 2008, but pursuant to an "attorney's eyes only" requirement.

b) GK must produce to SD, by April 24, 2008, documents concerning the transactions listed in Exhibit E to the position paper, along with an identical copy of the Exhibit E that it attached to its February 21, 2008 position paper so that SD can satisfy itself that GK has complied with the Court's directive.

c) With regard to GK's purchases of QO or QO-marked circuit breakers not included in the Exhibit E list, GK must produce the following, pursuant to the existing protective order:

- documents concerning any such purchases directly from suppliers not claimed to be currently authorized SD distributors; and

- the following information concerning purchases directly from suppliers claimed to be currently authorized SD distributors, via a spreadsheet similar to Exhibit F to its position paper: date of purchase, item code, order number, location (only the country or U.S. state, not the specific city unless it is Hong Kong or Singapore), quantity,

and unit price.

       d)       Documents concerning GK's purchases of non-QO or QO-marked circuit breakers shipped from or via China, Hong Kong, or Singapore, documents are to be produced to SD's outside counsel pursuant to an "attorney's eyes only" requirement. Counsel may inspect those records for a period of seven days to determine if there is a reasonable basis to believe that they reflect purchases of counterfeit QO circuit breakers. Any documents that do not so reflect must be returned to GK at the conclusion of the seven day period. Any disputes over whether the documents reflect purchases of counterfeit QO circuit breakers are to be brought before the Court promptly for determination.

       e)       Before SD may conduct follow-up discovery to identify the original source(s) of QO or QO-marked circuit breakers purchased or sold by GK, it must obtain leave of court. To obtain leave, SD will be required to show a reasonable basis to believe, based on the discovery it has obtained to date and other information it has, that the follow-up discovery is reasonably likely to lead to evidence concerning transactions in counterfeit QO circuit breakers.

**Conclusion**

The Court grants SD's motion to compel in part as stated above [docket no. 40].

The case is set for a status hearing on April 17, 2008 at 9:30 a.m.

 

_____

Date: March 31, 2008                                                MATTHEW F. KENNELLY
                                                                               United States District Judge