# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SCHNEIDER ELECTRIC USA, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> GAFFNEY-KROESE SUPPLY CORP., ) <br> ) <br> Defendant. ) | Case No. 07 C 3897 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2007, Square D Co. sued Gaffney-Kroese Supply Corp. for acquiring and selling counterfeit Square D circuit breakers. In 2009, based upon the parties' agreement, the Court entered a consent decree that, among other things, barred Gaffney and its agents, representatives, officers, and employees from acquiring, distributing, or selling certain "prohibited product[s]"—authentic Square D circuit breakers—except for a small, specified amount of permitted purchases from Home Depot, a retailer.

The Court undertook enforcement proceedings in 2011 after Schneider Electric USA, Inc., Square D's successor in interest and the current named plaintiff, alleged that Gaffney was purchasing prohibited products from unauthorized distributors. After an evidentiary hearing, but before the Court could rule, the parties stipulated to entry of a modified consent decree. Schneider initiated contempt proceedings again in 2013, alleging that Gaffney had violated the consent decree by failing to send Schneider monthly reports of its purchases of prohibited products. The Court held Gaffney and

contempt and ordered payment of Gaffney's costs and attorney's fees for enforcing the order, a total of about $35,000.

Schneider initiated further proceedings in 2016, alleging that James Campe, who held himself out as an officer of Gaffney, appeared to be purchasing Square D products on Gaffney's behalf. The Court allowed Schneider to take discovery. Following discovery, Schneider moved the Court for an order to show cause why Gaffney should not be held in contempt. The Court apologizes to the parties for its inordinate delay in ruling on the motion.

## Discussion

A court has the inherent authority to enforce compliance with a consent decree through civil contempt. *See, e.g., Spallone v. United States*, 493 U.S. 265, 276 (1990). Contempt sanctions are properly imposed "for two reasons: to compel compliance with the court order and to compensate the complainant for losses caused by contemptuous actions." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 757 (7th Cir. 2008) (internal quotation marks omitted). The party seeking a contempt finding must establish by clear and convincing evidence that there was an order that set forth an unambiguous command; the respondent violated the command; the violation was significant, meaning that the respondent did not substantially comply with the order; and the respondent did not make a reasonable and diligent effort to comply. *Ohr v. Latino Express, Inc.*, 776 F.3d 469, 474 (7th Cir. 2015).

In this case, it is undisputed that Campe purchased prohibited products that Gaffney was barred from acquiring under the consent decree. The key liability-related questions disputed by the parties are whether these purchases can be attributed to

Gaffney and whether Gaffney made a reasonable and diligent effort the comply with the consent decree.

The consent decree bars any "officer" of Gaffney from engaging in prohibited purchases. Schneider has established by clear and convincing evidence that Campe was a *de facto* officer of Gaffney when he made the purchases at issue. A corporate officer exercising the functions of his office offices under color and claim of authority, even if not duly elected or appointed, is considered to be a *de facto* officer. *See H&H Press, Inc. v. Axelrod*, 265 Ill. App. 3d 670, 679, 638 N.E.2d 333, 339 (1994). The authority of an officer "may be proved by evidence of her having previously exercised certain powers as officer or agent with the approval or recognition of the corporation." *Id.* In *H&H Press*, for example, the court upheld a finding that the defendant was a *de facto* officer because she had "held herself out to be the vice-president of [the company], had personally placed certain orders and requests for services from plaintiffs, met sellers and potential buyers at trade shows, and was responsible for selling the services" of the company. *Id.* The fact that she exercised these powers "with the approval or recognition of the corporation" was sufficient to establish that she was a *de facto* officer of the company.

The same is true here. The evidence clearly and convincingly establishes that during the period he was purchasing the prohibited products, Campe held himself out as a senior vice president of Gaffney to other Gaffney employees and to other entities with which Gaffney did business and that he exercised responsibilities consistent with that designation. He managed, reviewed, and fired Gaffney employees. He was a member of Gaffney's executive management team, which reflects that he exercised a significant

level of authority within the company.  And at various points he was responsible for opening and closing Gaffney offices overseas.  Significantly, over a two-year period Gaffney paid Campe $20,000 per month, plus expenses, for his services on behalf of the company.

Gaffney argues that despite this, it cannot be held responsible for Campe's prohibited purchases because he made the purchases for his own company, and not on Gaffney's behalf.  But the consent decree imposes its prohibitions on Gaffney's "officers" irrespective of whether they were, at the time, acting as "agents" of Gaffney—who are also, and separately, prohibited from acquiring or selling Square D products.

The fact that Campe was a *de facto* officer of Gaffney, however, does not by itself authorize a finding of contempt.  As indicated earlier, the party seeking a contempt finding must show by clear and convincing evidence that, among other things, the respondent did not make a reasonable and diligent effort to comply with the Court's order.  *Latino Express*, 776 F.3d at 474.  Schneider has not made the necessary showing.  The evidence shows that Gaffney's president/chief executive officer sent a memorandum to Gaffney managers advising them of the consent decree and its restrictions.  Managers were told to meet with their staff and get them to acknowledge their awareness of the decree.  Gaffney also set restrictions on its purchasing software that precluded orders of prohibited products.  And even though some purchases—from Home Depot—were permitted by the decree, only certain employees were permitted to do this.  On what was apparently the only occasion where a Gaffney employee tried to override the restrictions on purchasing software, the transaction was reversed, and the

4

employee was disciplined.

Schneider contends that was not good enough, arguing that Gaffney effectively made an end run around the consent decree via its dealings with Campe. But there is uncontradicted evidence that Gaffney management specifically told Campe that he could not purchase prohibited products. And there is no evidence that Gaffney was aware of Campe's purchases of products prohibited by the consent decree. Though the Court has concluded that Campe was a de facto officer of Gaffney, there is no evidence that Campe purchased the prohibited products in order to benefit Gaffney. The products were used in conjunction with panels and load centers sold by Gaffney, but Gaffney was not aware of Campe's purchases, and the evidence reflects that Campe acted to benefit himself.

Because Schneider has not shown by clear and convincing evidence that Gaffney failed to make a reasonable and diligent effort to comply with the consent decree, the evidence is insufficient for a finding of contempt.

## Conclusion

For the reasons stated above, the Court denies plaintiff's motion for an order to show cause [dkt. no. 175].

Date: March 4, 2019

_____
MATTHEW F. KENNELLY
United States District Judge